**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                                        :
ANTONIO TAYLOR,                         :
                                        :
          Petitioner,                   :   Civil No. 11-2326 (NLH)
                                        :
v.                                      :
                                        :
J.T. SHARTLE,                           :   OPINION
                                        :
Respondent.                             :
                                        :
```

**APPEARANCES:**

**ANTONIO TAYLOR**, Petitioner pro se
54382-066
F.C.I. Fairton
P.O. Box 420
Fairton, N.J. 08320

**IRENE E. DOWDY**, Counsel for Respondent
Office of the United States Attorney
Camden Federal Bldg. & U.S. Courthouse
401 Market Street
4th Floor
Camden, N.J. 08101

**HILLMAN**, District Judge

Petitioner Antonio Taylor ("Petitioner"), currently confined at F.C.I. Fairton in Fairton, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking <u>nunc pro tunc</u> designation for time he spent in state custody. For the reasons expressed below, the Court will deny the Petition.

**I. BACKGROUND**

On August 28, 1999, Petitioner was arrested by the Philadelphia Police Department. At that time, Petitioner was

charged with: Possessing an Instrument of Crime; Simple Assault; Aggravated Assault; Recklessly Endangering Another; Terroristic Threats; Robbery; Robbery of a Motor Vehicle; Theft by Unlawful Taking or Disposition; Receiving Stolen Property;  Firearm Carried Without a License.  (Res't's Answer, Declaration of Henry Davis ("Davis Decl."), Attach. 1, BOP Designations and Sentence Computation Center ¶ 4.)  Since he was on parole at the time of these offenses, on November 3, 1999, the Pennsylvania Board of Probation and Parole issued a decision, ordering that Petitioner be detained pending disposition of the criminal charges stemming from his arrest on August 28, 1999.  The Board directed that Petitioner be recommitted to a state correctional institution as a technical parole violator when available to serve 12 months backtime.  (Davis Decl. ¶ 5; Attach. 2, Notice of Board Decision, 11/03/1999.)

    On March 1, 2000, the Commonwealth of Pennsylvania dismissed all state charges against Petitioner arising from the arrest on August 28, 1999 but those charges were re-filed on March 30, 2000.  (Pet. ¶¶ 7-8.)  Petitioner remained in state custody. (Davis Decl. ¶ 6; Attach. 3, Presentence Investigation Report, U.S.D.C., E.D. Pa., Docket No. 00-354-02, p.1 and ¶ 41.)  On July 5, 2000, the U.S. Marshals Service borrowed Petitioner from State Correctional Institution [SCI] Graterford and took him into temporary federal custody, pursuant to a federal writ of habeas

corpus ad prosequendum.  (Davis Decl. ¶ 7; Attach. 3; Attach. 4, USMS Prisoner Tracking System, District of Middle Pennsylvania, Individual Custody and Detention Report 1-2.)

Petitioner pled guilty to a charge of Felon in Possession of a Weapon, in violation of 18 U.S.C. §§ 922(g), 942(e), date offense concluded 08/28/1999, before the United States District Court for the Eastern District of Pennsylvania.  On April 1, 2002, he was sentenced by that court to a total term of 200 months to run consecutively to the state sentence that Petitioner was currently serving for his parole violation.  (Davis Decl. ¶ 8; Attach. 5, Judgment and Commitment Order, U.S.D.C., E.D. Pa., Case No. 2:00cr00354-02; Pet. ¶ 16.)  On April 12, 2002, the U.S. Marshals Service returned Petitioner to the Pennsylvania Department of Corrections, upon satisfaction of the federal writ of habeas corpus ad prosequendum. (Davis Decl. ¶ 9; Attach. 6, Detainer Based on Federal Judgment and Commitment; Attach. 7, USMS Prisoner Tracking System, District of Eastern Pennsylvania, Individual Custody and Detention Report, 2.)  On March 5, 2003, the Pennsylvania Board of Probation and Parole considered Petitioner's case and issued a Notice of Board Decision to take no action.  (Davis Decl. ¶ 10; Attach. 8, Pennsylvania Board of Probation and Parole, 03/05/2003; Pet. ¶ 25.)

On April 8, 2003, the Pennsylvania Board of Probation and Parole again considered Petitioner's case and issued a Notice of

Board Decision stating that "at this time your best interests do not justify or require you being paroled/reparoled, and the interests of the Commonwealth will be injured if you were paroled/reparoled.  Therefore, you are refused parole/reparole at this time." (Pet. ¶ 26; Ex. 4.)  On February 12, 2004, the Pennsylvania Board of Probation and Parole again considered Petitioner's case and issued a Notice of Decision granting Petitioner parole.  (Davis Decl. ¶ 11; Attach. 9, Notice of Board Decision, 02/12/2004; Pet. ¶ 27.)  On April 22, 2004, Petitioner was released on parole from the Pennsylvania authorities to the U.S. Marshals Service to begin his federal sentence of imprisonment.  (Davis Decl. ¶ 12; Attach. 4, p. 2; Attach. 10, Order to Release on Parole, Actual Date of Release 04/22/2004; Pet. ¶ 28.)

Once Petitioner was in federal custody, the Bureau of Prisons ("BOP") computed his sentence and awarded him pre-sentence custody credit (jail credit) from August 28, 1999 through August 30, 1999 (the date he was arrested on the offense that led to the federal charge, to the date he began his term as a state parole violator), with a projected release date of October 25, 2018.  (Davis Decl. ¶ 13; Attach. 13, Sentence Monitoring Computation Data printout as of 12/14/2006.)  On May 30, 2006, Petitioner, who was confined at USP Allenwood at the time, brought his first petition for writ of habeas corpus under

4

28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania.  (Taylor v. Miner, Civil Action No. 06-1086 (JFM), 2008 WL 2705535 (M.D.Pa. July 10, 2008)). Petitioner challenged the BOP's computation of his federal sentence, seeking credit for three time periods: (1) August 28, 1999 through July 4, 2000 (SCI Graterford); (2) July 5, 2000 through April 11, 2002 (FDC Philadelphia); and (3) April 12, 2002 through April 22, 2004 (SCI Graterford).  (Id.)  The court appointed counsel to represent Petitioner and conducted an evidentiary hearing.  (Id. at *1.)  On July 10, 2008, the court granted the petition in part.  (Id.)

With regard to the period of August 28, 1999 through July 4, 2000, the court found that Petitioner had been granted federal credit for the time period of August 28, 1999 through August 30, 1999.  The court further found that on August 30, 1999, Parole Agent Ryan prepared a technical violation arrest report and once said report was created, Petitioner was no longer being held simply pursuant to the new state charges that ultimately formed the basis for his federal indictment.  Rather, he was being held for his parole violation.  Therefore, the court found that Petitioner was not entitled to credit from August 31, 1999 through July 4, 2000.  (Id. at *4.)

With regard to the period of July 5, 2000 through April 11, 2002, which represents the period that Petitioner was in federal

5

custody in connection with his federal conviction for being a felon in possession of a firearm, the court found that Petitioner did not receive credit towards his state parole violation sentence. Therefore, the court found that Petitioner was not serving his state parole violation sentence during the period he was in federal custody and granted him credit for the time period of July 5, 2000 through April 11, 2002. (Id. at *5.)

Finally, with regard to the period of April 12, 2002 to April 22, 2004, which represents the time period from when he was returned to state custody until his release on parole to the federal detainer, the court found that Petitioner was not entitled to credit. (Id.) Specifically, the court stated that this time period "unquestionably represents a period that Taylor was in state custody serving his state parole violation sentence. The fact that the Parole Board regrettably took its time considering Taylor's request for parole upon his return to state custody is a state issue." (Id.)

On August 13, 2008, the BOP updated its computation of Petitioner's sentence to reflect the district court's order for credit. The BOP computed Petitioner's sentence as commencing on April 22, 2004, the date that Petitioner was released on parole to the federal detainer, with pre-sentence custody credit for August 28-30, 1999 and July 5, 2000 through April 11, 2002. With anticipated good time credit, Petitioner's projected release date

6

is now January 18, 2017.  (Davis Decl. ¶ 15; Attach. 15, Sentence Monitoring Computation Data printout, updated on 08/13/2008.) Thereafter, Petitioner requested that the BOP make a <u>nunc pro tunc</u> designation of a state institution for service of his federal sentence.  In response, the BOP completed a <u>Barden</u> Request Information Worksheet.  <u>See</u> <u>Barden v. Keohane</u>, 921 F.2d 476 (3d Cir. 1980).  The BOP noted that Petitioner's initial state sentence had been imposed on July 31, 1991, for a term of 6-19 years; that he had been paroled from that state sentence on February 8, 1999; that he was arrested on August 28, 1999 on new charges; that he was serving a state parole violation term at the time he received his federal sentence on April 1, 2002; and that Petitioner's federal sentence had been ordered to run consecutively to the state sentence that he was already serving. Therefore, the BOP determined that a <u>nunc pro tunc</u> designation was not appropriate.  (Davis Decl. ¶ 16; Attach. 16, <u>Barden</u> Request Information Worksheet.)

    On April 25, 2011, Petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241.  Petitioner states that he is not "referring to what time he was already granted by the court's [sic]. [He] instead is asserting other dates of time spent in 'official detention' that should be granted as '<u>nunc pro tunc</u> Designation' time."  (Pet. 8.)  It appears that he is asking for credit for the following:

> August 31, 1999 through July 4, 2000, which is the time spent in state custody before the marshals took him into temporary federal custody (10 months and 5 days);
>
> April 12, 2002 through April 8, 2003, which is the time after Petitioner was returned to state custody from temporary federal custody before the Pennsylvania Parole Board took any action (11 months and 24 days);
>
> 1 year, 10 months and 28 days which is time he lost due to the mishandling of Petitioner's parole violation sentence by the state parole board.

Respondent filed his answer, arguing that the petition should be dismissed as successive; that the BOP has correctly computed Petitioner's sentence in accord with the governing statutes and the sentencing court's intent; and a <u>nunc pro tunc</u> designation is not appropriate for this federal sentence, which was ordered to run consecutively to Petitioner's state sentence. (Resp't's Answer, Docket Entry No. 7.)  Respondent concedes that Petitioner has exhausted his administrative remedies.  Petitioner filed a reply, stating the following:

> If this honorable court takes into consideration the two sentences imposed upon the Petitioner respectively by both the PA Parole Board, that of a 12 month recommitted sentence for being a technical parole violator only, on November 3, 1999, and, the 200 month federal sentence he received April 1, 2002 to run consecutively to his parole violation sentence the courts will see that Petitioner was only ordered by both jurisdictions combined to serve out a confined term of 17 years and 8 months.  When the court does all the calculations on when Petitioner's federal sentence actually commenced, which was April 22, 2004, and the time Petitioner was sentenced to, 16 years, 8 months, the court will see that Petitioner's original release date without any good time received was December 26, 2020.  That date by itself would have brought forth an "official detention" confinement time of 21 year's [sic], 3 months, and, 28 days.  That alone would have

>    placed Petitioner 3 year's [sic], 7 months and 28 days beyond his ordered term of prison confinement. Even with the 1 year, 9 months, and, 6 days of credit time Petitioner was awarded the courts would still find in their calculations that the Petitioner is well over the total time he was ordered to serve. Deducting the awarded credit time would still leave Petitioner being 1 year, 10 months, and, 28 days over the time ordered to serve and this is what time Petitioner only seeks through awardance of nunc pro tunc designation.

(Pet'r's Reply 3-4, Docket Entry No. 8.)

## II. DISCUSSION

### A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the computation of his federal sentence, and he was incarcerated in

9

New Jersey at the time he filed the Petition.  See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005).

**B.  Merits of the Petition**

The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, see United States v. Wilson, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and the Attorney General has delegated that authority to the Director of the Bureau of Prisons, see 28 C.F.R. § 0.96 (1992).  Computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination of, first, the date on which the federal sentence commences and, second, the extent to which credit is awardable for time spent in custody prior to commencement of the sentence:

> (a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

The BOP, in the exercise of its discretion, has authority to designate as a place of federal confinement, nunc pro tunc, the facilities in which a federal prisoner served an earlier state sentence.  See Barden v. Keohane, 921 F.2d 476, 480-83  (3d Cir. 1990)(a defendant is entitled to "fair treatment" on his application for a nunc pro tunc designation); 18 U.S.C. § 3621(b).[1]  The decision of the BOP is subject to judicial review only for abuse of discretion.  See Barden, 921 F.2d at 478.

Pursuant to BOP Program Statement 5160.05: "State institutions will be designated for concurrent service of a federal sentence when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system."  P.S. 5160.05 ¶ 3(a) (2003).  The BOP's authority to designate a state institution for concurrent service of a federal sentence is delegated to Regional Directors.  The Program Statement specifically addresses requests by prisoners for a nunc pro tunc designation.

> (4) Inmate Request. Occasionally, an inmate may request a nunc pro tunc (i.e., occurring now as though it had occurred in the past) designation. As a result of the decision in Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990), the Bureau considers an inmate's request for pre-sentence credit toward a federal sentence for time

---

[1] Section 3621(b) provides that, "The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable ...."

11

spent in service of a state sentence as a request for a nunc pro tunc designation.

(a) In Barden, the court held that the Bureau must consider an inmate's request for concurrent service of the state and federal sentences.

• However, there is no obligation under Barden for the Bureau to grant the request by designating a state institution retroactively as the place to serve the federal sentence.

(b) This type of request will be considered regardless of whether the inmate is physically located in either a federal or state institution. Information will be gathered, if available, to include:

• a copy of the federal and state J & Cs
• the State sentence data record to include jail credit, and
• any other pertinent information relating to the federal and state sentences.

(c) In making the determination, if a designation for concurrent service may be appropriate (e.g., the federal sentence is imposed first and there is no order or recommendation regarding the service of the sentence in relationship to the yet to be imposed state term), the RISA will send a letter to the sentencing court (either the chambers of the Judge, U.S. Attorney's Office, and/or U.S. Probation Office, as appropriate) inquiring whether the court has any objections. Regardless of where the original inquiry is directed, the U.S. Attorney's Office and U.S. Probation Office will receive a courtesy copy.

(d) If, after 60 days, a response is not received from the sentencing court, the RISA will address the issue with the Regional Counsel and a decision will be made regarding concurrency.

(e) No letter need be written if it is determined that a concurrent designation is not appropriate ....

(f) The Bureau will not allow a concurrent designation if the sentencing court has already made a determination regarding the order of service of sentence (e.g., the federal sentencing court ordered the sentence to run consecutively to any other sentence, or custody in

12

>     operation, during any time in which the inmate requests
>     concurrent designation).

Bureau of Prisons, Program Statement 5160.05, ¶ 9.

Here, Petitioner made his request for a <u>nunc pro tunc</u> designation of the state facility, as a place for serving his federal sentence, in a Request for Administrative Remedy. The BOP reviewed Petitioner's request for <u>nunc pro tunc</u> designation on June 2, 2010 under 18 U.S.C. § 3621(b) and concluded that <u>Barden</u> credit is not appropriate for Petitioner because he was serving a state parole violation term at the time of federal sentencing.

The Court finds that the BOP did not abuse its discretion in denying Petitioner <u>Barden</u> credit. Since he was already serving his state court parole violation term when he was sentenced in federal court, the federal court could have directed concurrence but instead elected to expressly order consecutive sentences. <u>Goodman v. Grondolsky</u>, 2010 WL 5059556, at * 4 (D.N.J. December 03, 2010). Further, the specific order from the federal court regarding consecutiveness precludes any grant of <u>Barden</u> credit by the BOP. <u>Id.</u> Therefore, the petition will be denied.[2]

---

[2] To the extent Petitioner is challenging the amount of time he spent in state custody after being returned from federal custody, before receiving a review of his status by the Parole Board, this claim has already been appropriately denied by the District Court of the Middle District of Pennsylvania. See <u>Taylor</u>, 2008 WL 2705535, at *5 ("April 12, 2002 to April 22, 2004...represents the time period from when he was returned to state custody until his release on parole to the federal detainer. We do not believe that Taylor is entitled to credit for this time period. This time period unquestionably represents a period that Taylor was in state custody serving his state parole violation sentence. The fact that the Parole Board

### III. CONCLUSION

For the above reasons, the Petition for a Writ of Habeas Corpus will be denied. An appropriate Order will be issued.

Dated: February 10, 2012

At Camden, New Jersey          s/ Noel L. Hillman
                                   NOEL L. HILLMAN
                                   United States District Judge

---

regrettably took its time considering Taylor's request for parole upon his return to state custody is a state issue.")